Floyd, Incorporated v. Commissioner.
Floyd, Inc. v. Commissioner
Docket No. 258.
United States Tax Court
1943 Tax Ct. Memo LEXIS 99; 2 T.C.M. (CCH) 834; T.C.M. (RIA) 43439; September 27, 1943
*99 Sidney J. Hayles, C.P.A., 931 Citizens & Southern Nat. Bank Bldg., Atlanta, Ga., for the petitioner. Bernard D. Hathcock, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This case involves deficiencies determined in income tax and personal holding company surtax liability as follows: For the calendar year 1938 a deficiency in income tax of $220.93, and a deficiency in personal holding company surtax of $571.27; for the calendar year 1939 a deficiency in income tax of $72.65 and a deficiency in personal holding company surtax of $6,491.92. The questions are whether the petitioner was entitled to deduct salaries paid to its vice president and assistant secretary, and the expenses of operation of an automobile, and depreciation thereon. From evidence adduced, we make the following findings of fact. Findings of Fact Petitioner is a corporation organized under the laws of the State of Georgia, with its principal office in Atlanta, Georgia. It is a personal holding company. The names of its principal officers are as follows: President, James S. Floyd; vice president, Mrs. James S. Floyd, his wife; assistant secretary, Alfred S. Floyd, his son. *100 The corporation was organized for the purpose of holding, managing and supervising investments and securities, and doing trading. During the taxable years the president received a salary of $1,200 a year; the vice president received a salary of $2,400 a year, and the assistant secretary received a salary of $75 a month in 1938 and $65 a month in 1939. On December 31, 1938, the capital and surplus of the company was $1,412,632.67 and on December 31, 1939, it was $1,417,507.66. When the company was originally organized, Mrs. James S. Floyd subscribed for 40 per cent of the capital stock, paying for it out of her own funds which she had inherited. At that time it was understood and agreed that she would have something to do with the management of the company and that she would receive a salary of $200 a month. The stock of the company during the taxable years was held as follows: In 1938, James S. Floyd held 60 per cent and Mrs. James S. Floyd held 40 per cent. In 1939, it was held 59.28 per cent by James S. Floyd; Mrs. James S. Floyd held 38.96, and Alfred S. Floyd, the assistant secretary, held.88 per cent. The stock subscriptions at the time of incorporation were paid in stock and *101 securities of different kinds and Mrs. James S. Floyd's portion was paid in stocks in her name, of a value greater than the par value of the stock which she received in petitioner. It was agreed at that time that she was to be the vice president and to have a part in the management of the corporation, and that agreement was a condition precedent to her stock subscription. None of the stocks that were turned in by James S. Floyd or his wife at the time the petitioner was organized, have ever been sold. For the year 1938, the gross income of the corporation was $37,395.28, consisting of dividends and an item of $113.28 interest on loans. For the year 1939 the gross income of the corporation was $28,067.64, consisting of dividends of $28,038.25, and interest of $29.29. No changes were made in the petitioner's investment in the taxable years. The principal occupation of the petitioner in 1938 and 1939 was to collect dividends from the stocks which were turned into it in exchange for its capital stock. The bookkeeper was paid $900 a year. her duty was to receive the dividends and deposit them in the bank account. It was definitely understood that all dividend checks were to be deposited *102 in the bank account upon their receipt. Mrs. James S. Floyd assists her husband in the affairs of the business by coming to the office or by telephone. He was absent about 25 per cent of the time during the taxable years and she had complete charge of directing the affairs of the business during his absence and during his sickness. She consults with him at all times about the policies of the business. Company matters come up every day, such as questions about voting stock in different corporations owned by the petitioner. Some one is always in charge of the office, either James S. Floyd, or his wife, when he is away. She hired the bookkeeper about six years ago. Mrs. James S. Floyd does not attend stockholders' meetings of the different corporations whose stock petitioner owns. She does attend stockholders' meetings of the petitioner. She called the bookkeeper almost daily, and kept a record of what she wished to do. The personal business of James S. Floyd is also conducted from the same office as petitioner, and to some extent, Interstate Investment Co. uses the same office. He attempted to keep up with the investments of the company to determine whether they should be kept or *103 sold and to manage the affairs of the company. He spent some part of almost every day in the office, his time, however, being divided with other companies. In 1938 and 1939, he drew salaries from about four companies. He is an officer or director of several of the corporations in which the petitioner owns stock. He was interested in different business concerns and companies, involving about ten companies. One of them was the Interstate Investment Co., conducted principally from Tampa, Florida. Floyd, Inc., is largely interested in that company. A great many things came up. James S. Floyd consulted with the officers or directors of the corporations owned by the petitioner, and to the best of his ability watched those corporations. He has consulted with his wife as to the advisability or nonadvisability of disposing of holdings of the petitioner, and has discussed with his wife opportunities of investment. During the taxable years, he subscribed for the Wall Street Journal. During the taxable years Mrs. James S. Floyd came to the office at least once a week, when her husband was in town, and when he was out of town, more often. Alfred S. Floyd, the assistant secretary, was about 25 *104 years old in 1938. He was learning the business under his father's direction, and did whatever was necessary around the office. His father had in mind teaching him the business so that he could run it in case something happened to the father. The son did whatever he was called upon to do, ran errands, attended to bank accounts, and such jobs as he was capable of doing. He made deposits in the bank. The bookkeeper made the entries as to dividend checks. The son's main job was learning. Petitioner owned a Studebaker automobile. The expenses of operating it were paid by the petitioner. The automobile expenses paid were $453.06 in 1938, and $389.41 in 1939, consisting of gas, oil, tires and repairs. Depreciation of 25 per cent of value was charged in each year, the charge being $305.04 each year, the automobile having cost $1,220.15. The Studebaker automobile was stored in a garage in the daytime and taken home at night. The automobile was driven on trips to the different business concerns or companies in which the petitioner and James S. Floyd were interested, including Interstate Investment Co., of which James S. Floyd was president. When a trip was made for the Interstate Investment *105 Co. with the automobile, it was charged against that company. The car may have been used for trips for the Exposition Cotton Mills, owned by a Georgia holding company, of which James S. Floyd was president. In making trips about the city of Atlanta to look after his interests, James S. Floyd used the Studebaker automobile. Opinion 1. Did the Commissioner err in denying the deduction of $2,400 a year salary paid to Mrs. James S. Floyd, vice president? Although the brief for the petitioner stresses the fact that the company had capital of more than a million dollars, nevertheless the assets consisted of stock in other corporations, and its entire income, with the exception of a very few dollars, was from dividends received as a holding company. The evidence is that a bookkeeper was paid $900 a year, and that the custom was to deposit the dividends in the bank and that the bookkeeper kept the record. It was agreed when Mrs. James S. Floyd took stock in the corporation in return for inherited securities worth more than the par value of stock in the petitioner, that she would receive a salary of $2,400 a year. This agreement has been carried out. Although there is some evidence that *106 she was in charge of the office in the absence of her husband, and was consulted about various matters, and he was away about 25 per cent of the time, all of which evidence would tend to indicate some value for her services, nevertheless it is apparent from all of the evidence that her services were ancillary to his and of less importance. He was paid a salary of only $1,200 as president. Though he drew salaries fom other companies, there is nothing in that fact, nor in any other evidence to indicate that his salary was not paid on the basis of services performed. We therefore find no error in the disallowance of $2,400 a year as salary to the wife. We think that payment was dictated and caused more by the stock subscription than by the services she rendered. Considering the fact that she was in charge of the office about one-fourth of the time, in the absence of her husband, and to some indefinite extent was consulted at other times, we approve of a deduction of a salary of $600 a year to her as vice president. 2. Under the evidence, we are not convinced that the salary to the son was paid for services rendered. He seems to have been used, to some extent, as an office boy, but his *107 main job was learning, in the words of his father, the only witness. The amount of time spent by him nowhere appears. The training received by him appears to have been considered valuable by his father, the president of the company, and the evidence convinces us that it was at least sufficient compensation for such services as are shown to have been performed by him. No error is shown in the disallowance by the Commissioner of salary to the son as assistant secretary. 3. With reference to the claim of deduction for expenses of a Studebaker automobile and depreciation thereon: The item was disallowed, presumably properly so. The evidence is very sketchy. Therefrom it appears that the automobile was used in connection with the business of other companies as well as that of the petitioner, some of which may have had no connection with the petitioner, since the evidence shows that James S. Floyd was interested in about ten companies, in some of which petitioner did not own stock. Obviously, such a showing is insufficient to constitute the necessary showing of error. The car appears to have been used to some extent in the petitioner's business, but the evidence does not show to what extent *108 and altogether fails to establish that the car was exclusively used in the business of the petitioner. There is no evidence upon which we can estimate and allocate to the petitioner some portion of the expense and depreciation upon the car. If this is unfortunate, it must be ascribed to a considerable amount of obvious unwillingness and indefiniteness on the part of the witness in answering questions with reference to the use of the automobile. This is true also of other evidence. Asked about what came up in the office as to which his wife assisted, the witness answered: "That might be a business secret." Such answers, of course, and patent indefiniteness in others, tend towards a lack of the convincing quality necessary to overcome the presumption of correctness of the determination of deficiency. We hold that no showing has been made of error in the denial of depreciation for automobile expense. Decision will be entered under Rule 50.